IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

B.A. MCCLURE and
CHERYL MCCLURE,

             Plaintiffs,

v.                                          CIVIL ACTION NO. 3:10-0701

CITY OF HURRICANE,
CITY OF HURRICANE SANITARY
STORMWATER BOARD,
CITY COUNCIL OF THE CITY OF
HURRICANE, CITY OF HURRICANE
PLANNING COMMISSION,

             Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 47). A hearing was held on the motion on April 18, 2011. For the following reasons, the motion is **GRANTED** in part, and the Court **DISMISSES with prejudice** Plaintiffs' constitutional takings claim, procedural due process claim, and First Amendment claim. The motion is **HELD in abeyance** with respect to Plaintiffs' equal protection claim.

**I. BACKGROUND**

Plaintiffs B.A. McClure and Cheryl McClure originally filed this suit in the Circuit Court of Putnam County, West Virginia, on January 13, 2006. *Compl.*, *Ex. 1 to Notice of Removal*, Doc. 1-1. At issue was the application of a newly enacted provision of the Hurricane City Code to the Plaintiffs' ongoing development of a residential subdivision. Article 936 of the City Code governs the requirements and standards for stormwater management. The subsection of particular relevance

to this action is § 936.20(a), which provides: "The requirements and standards of this section shall apply to all new developments and redevelopment projects including the disturbance of land activities of any kind, on any lot, tract, parcel or land or any portion thereof." Plaintiffs contested the application of these requirements to the ongoing construction of their previously approved subdivision as Plaintiffs had commenced development of their eighty-one lot residential subdivision in 2000, prior to the enactment of the provision in 2005. *Compl.* ¶ 10; *2d Am. Compl.* ¶ 7, *Ex. 5 to Notice of Removal*, Doc. 1-1. Accordingly, Plaintiffs believed their subdivision should "grandfather" as it was not a new development or redevelopment project.

However, on October 4, 2005, Plaintiffs were advised that their development was not in compliance with Article 936. *2d Am. Compl.* ¶ 13. At that time, Plaintiffs had completed the majority of their subdivision, and only thirty lots remained to be developed. The City informed Plaintiffs that if they did not create a stormwater management plan for the remaining section of the subdivision, the City would not issue building permits for the residual lots. *Defs.' Mem. in Support Mot. Summ. J.* 2, Doc. 48. As Plaintiffs challenged the application of Article 936 to their subdivision, the parties were at an impasse. No further building permits were issued[1] and, as a result, the continued construction of Plaintiffs' subdivision was delayed. *See, e.g.*, *2d Am. Compl.* ¶¶ 13, 14, 16, 22, 24. Plaintiffs sought declaratory and injunctive relief from the application of Article 936 to the ongoing construction of Plaintiffs' subdivision. *Compl.* at 1–2.

At issue in the original complaint was whether, as the McClure subdivision's development began in 2000, it grandfathered in under § 936.20(a). *Id.* ¶ 31; *2d Am. Compl.* ¶ 17. On July 30,

---

[1] Apparently a building permit was issued to one contractor in error. Defendants maintain that no further building permits may be issued without a stormwater management plan that complies with Article 936. *Aff. of Ben Newhouse* ¶ 16, Doc. 47-5.

2009, the Circuit Court ruled that Article 936 did not apply to Plaintiffs' property. *2d Am. Compl.* ¶ 37. The Circuit Court allowed Plaintiffs to file an amended complaint regarding monetary damages, which Plaintiffs filed on July 17, 2009. *Am. Compl.* ¶ 7, *Ex. 3 to Notice of Removal*, Doc. 1-1. This was dismissed by the Circuit Court, finding that Defendants were immune under the Governmental Tort Claims and Insurance Reform Act; Plaintiffs were again given leave to file an amended complaint. *Mot. to Dismiss Order*, *Ex. 4 to Notice of Removal*, Doc. 1-1. Plaintiffs filed their Second Amended Complaint on January 4, 2010.[2] *2d Am. Compl.* For the first time, Plaintiffs asserted claims under the federal Constitution, on the basis of a 42 U.S.C. § 1983 action. Defendants moved to have this action removed to this Court on April 29, 2010 on the basis of the newly asserted federal claims. *Notice of Removal*, ¶ 6, Doc. 1.

In November 2010, the Circuit Court decision finding Article 936 did not apply to Plaintiffs' property was reversed by the West Virginia Supreme Court of Appeals, which held:

> The provisions of Hurricane Municipal Ordinance §§ 936.01 to 936.44 (2005) govern all new development and redevelopment projects including the disturbance of land activities of any kind, on any lot, tract, parcel or land or portion thereof and, therefore, the construction of new residential homes in an existing subdivision falls within the purview of the ordinance.

---

[2] Plaintiffs also at that time filed claims against individual defendants; these defendants were dismissed pursuant to this Court's Order of October 25, 2010, for Plaintiffs' failure to properly serve them. *Mem. Op. & Order*, Doc. 20.

*McClure v. City of Hurricane*, --- S.E.2d ---, 2010 WL 4723615, Syl. Pt. 3 (W. Va. Nov. 22, 2010).[3] As this decision affirmatively answered the question of whether the ordinance in question applies to Plaintiffs' development, it is only the Constitutional claims that are currently before this Court. Plaintiffs contend that the application of Article 936 to their subdivision has resulted in a taking without just compensation in violation of their substantive due process rights. Plaintiffs also claim their procedural due process rights were violated by Defendants' failure to provide notice regarding the enactment and application of Article 936 to Plaintiffs' property. In addition, Plaintiffs argue Defendants have applied Article 936 in violation of the equal protection clause as the City has treated similarly situated developers differently than Plaintiffs. Finally, Plaintiffs assert that Defendants violated their First Amendment rights by restricting their participation in an open meeting of the city council. Defendants have moved for summary judgment on all claims. The issues have been fully briefed, and are ripe for disposition.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[3] Plaintiffs spend a portion of their response brief criticizing the West Virginia Supreme Court of Appeals decision. While Plaintiffs do not explicitly request the Court to review the application of Article 936 to their subdivision, the Court notes that it would be precluded from doing so under the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (finding district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Plaintiffs assert four different Constitutional claims. The takings claim, procedural due process claim, and First Amendment claim, and Defendants' arguments for their dismissal will be examined in turn.

#### A.  **Plaintiffs Have Failed to Establish Grounds for a Takings Claim**

"The Fifth Amendment of the United States Constitution prohibits the taking of private property without just compensation." *Laurel & Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008) (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005)). "This prohibition equally applies to the states through the Fourteenth Amendment." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1123 (4th Cir. 1995) (citing *Chicago Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226 (1897)). There is no "set formula for determining how far is too far," where a regulatory action becomes a compensable taking. *Lucas v. S.C. Coastal Council*,

505 U.S. 1003, 1015 (1992) (internal quotation marks and citations omitted). In *Lucas*, the United States Supreme Court recognized two categories of governmental regulatory action that may fall within the confines of a compensable taking under the Fifth Amendment. "First, regulations that compel a physical invasion of an owner's property are takings, no matter how slight the invasion or how weighty the public interest advanced to support them. Second, regulations that deny 'all economically beneficial or productive use of land' are compensable takings." *Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 285 (1998) (quoting *Lucas*, 505 U.S. at 1015) (other citations omitted). In addition to these categories,

> [w]here a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.

*Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)); *see also Multi-Channel TV*, 65 F.3d at 1123 (citing *Lucas*, 505 U.S. at 1015, 1019 n.8, 1024) (recognizing these three factors to be analyzed in a takings claim and a fourth, "whether the regulation substantially advances a legitimate state interest").

Applying these factors to this case, the Court can only conclude that Article 936 has not resulted in a regulatory taking of Plaintiffs' property. First, Article 936 merely requires all developers of new developments and redevelopments to incorporate an adequate stormwater management plan into the proposed development of their property. This is not a physical invasion of Plaintiffs' property, and therefore the character of the City of Hurricane's action is "drastically less offensive." *Multi-Channel TV*, 65 F.3d at 1123. Second, the ordinance does not deprive

Case 3:10-cv-00701 Document 58 Filed 04/19/11 Page 7 of 16 PageID #: 392

Plaintiffs of all or even close to all economically viable use of their property. As the Supreme Court has stated,

> "[t]aking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole . . .

—here, requiring a stormwater retention pond to handle stormwater runoff resulting from the development of the remaining thirty lots. *Penn Cent.*, 438 U.S. at 130. If Plaintiffs had constructed the stormwater retention ponds as required under Article 936, they would only have lost the use of three parcels of the thirty lots that remain to be developed.[4] This is one-tenth of the property subject to the Article 936 requirements; it cannot be said this removes "all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015.

Further, the majority of the economic impact of Article 936 on Plaintiffs is the result of Plaintiffs' decision to challenge the applicability of the ordinance to their property, and to delay compliance. The majority of the remaining plots were open for development, so long as Plaintiffs constructed the stormwater retention pond. The unanticipated expenses resulting from the delay in the continued development occurred because Plaintiffs declined to build the retention pond. Plaintiffs received a speedy review process and access to administrative hearings; the incidental impacts resulting from the length of the appeal process through the state courts, and now the federal courts, do not transform this into a regulatory taking. *See, e.g.*, *Sunrise Corp. of Myrtle Beach v.*

---

[4] In their Second Amended Complaint, Plaintiffs allege that only two lots were required for the stormwater retention pond. Both parties, in their briefing on the motion for summary judgment, state three lots were required. The Court does not find this makes a material difference in its analysis of the claims before it, and will adopt the larger number for use throughout this Opinion.

*City of Myrtle Beach*, 420 F.3d 322, 330 (4th Cir. 2005) ("As a general rule, a delay in obtaining a building permit is not a taking but a non-compensable incident of ownership.").

Third, while Plaintiffs' initial investment-backed expectations included the successful development and sale of all lots of the subdivision, the loss of three plots does not rise to the level of a compensable taking. Plaintiffs cite *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), to support their contention that while the ordinance may be substantially related to a government interest, it "so frustrate[s] distinct investment-backed expectations so as to amount to a 'taking.'" *Penn Cent.*, 438 U.S. at 127 (citing *Pennsylvania Coal*, 260 U.S. at 414–15). In that case, however, the regulation in question made it "commercially impracticable" to mine the coal as intended. *Pennsylvania Coal*, 260 U.S. at 414. In contrast, Plaintiffs could still have developed the majority of the remaining lots as they intended; Article 936 only required the sacrifice of three lots. This does not amount to a frustration of Plaintiffs' initial investment-backed expectations. A diminution in value, alone, does not establish a taking. *Penn Cent.*, 438 U.S. at 131. Plaintiffs have provided no additional evidence outside of the slight decrease in the number of lots they could develop for residential housing to support their contention that the application of Article 936 amounted to a compensable taking.

Lastly, Article 936 advances a legitimate public interest. The Supreme Court has recognized that "in instances in which a state tribunal reasonably concluded that the health, safety, morals, or general welfare would be promoted by prohibiting particular contemplated uses of land, th[e] Court has upheld land-use regulations that destroyed or adversely affected recognized property interests." *Penn Cent.*, 438 U.S. at 125 (quotation marks and citations omitted). Article 936 seeks to prevent flooding by requiring developers to offset the increase of stormwater runoff that results from the

construction of impervious surfaces such as sidewalks and roads. This is a perfect example of a "land-use regulation [that] does not effect a taking [as it] substantially advance[s] legitimate state interests." *Lucas*, 505 U.S. at 1024 (quotations and citations omitted). On the basis of the foregoing, the Court **FINDS** that Article 936 has not effected a taking and therefore **DISMISSES with prejudice** Plaintiffs' First Prayer for Relief in their Second Amended Complaint.

B.      **Defendants' Notice Regarding Article 936 and Its Application to Plaintiffs' Property Satisfied Procedural Due Process Requirements**

In Plaintiffs' Second Amended Complaint, they allege that "Defendants did not give proper notice to the Plaintiffs of the adoption of Article 936." *2d Am. Compl*, *Prayer for Relief* ¶ 2, *Ex. 5 to Notice of Removal*, Doc. 1-1. Defendants, in their summary judgment motion, fashion their argument for dismissal on the belief that Plaintiffs' claim is based on Defendants' failure to give Plaintiffs personal notice regarding the passage of Article 936. However, Plaintiffs, in their response to the summary judgment motion, base their procedural due process claim on Defendants failure to provide a deprivation hearing prior to the final determination of whether Article 936 applied to Plaintiffs' property.[5] The Court will address each argument in turn.

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process provides merely 'a guarantee of fair procedures—typically notice and an opportunity to be heard.'"

---

[5] Defendants contend that the Court cannot consider this claim as Plaintiffs did not properly raise it in the Second Amended Complaint. The Court notes, however, that under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice." Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a)(2). Based on the extensive recitation of facts contained in the Second Amended Complaint and the broadly worded allegation, the Court believes this claim was properly presented in the Second Amended Complaint. Accordingly, the Court will address Plaintiffs' claim that they were denied a deprivation hearing.

*Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009) (quoting *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Goss v. Lopez*, 419 U.S. 565, 579 (1975))). "[T]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' (usually prior to the deprivation of a protected interest)." *Bogart v. Chapell*, 396 F.3d 548, 556 (4th Cir. 2005) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)) (other citations omitted).

In asserting a procedural due process claim under the Fourteenth Amendment, a plaintiff must show "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). Property interests

> "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Further, to have a property interest in a benefit, a person must have a "legitimate claim of entitlement to it." *Id.*

*Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002). Here, Plaintiffs argue they had a property interest in being able to fully develop their subdivision as originally planned in 2000. In order to do so, Plaintiffs had to obtain building permits for each plot in the subdivision. Plaintiffs were deprived of this property interest by the application of Article 936 to their subdivision—without the stormwater retention pond, no further permits would be issued.[6]

---

[6] The Court believes there is a strong argument to be made that Plaintiffs do not have a cognizable property interest in the issuance of the required building permits. *See, e.g.*, *Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 68, 71 (4th Cir. 1992). However, as the Court finds Plaintiffs' procedural due process claim fails on other grounds and as neither party raised this argument, the Court does not decide this issue.

Accordingly, at issue in this claim is whether the notice and opportunity to be heard prior to the application of Article 936 to Plaintiffs' property were constitutionally adequate. On the facts established on the record, the Court can only conclude that Plaintiffs were afforded due process of law in the City's decision to deny further building permits until Plaintiffs constructed the required stormwater retention ponds.

In cases "involving regulation of land use through general police powers, [the procedures due] are not extensive." *Tri-County Paving*, 281 F.3d at 436 (citations omitted). In *Mathews v. Eldridge*, the Supreme Court of the United States established a set of factors to be considered in ascertaining whether the procedures provided prior to the deprivation of a protected interest were constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976) (citation omitted); *see also McLelland v. Massinga*, 786 F.2d 1205, 1211 (4th Cir. 1986) (citing the *Mathews v. Eldridge* factors). Where a party is provided with "some informal procedure, such as an opportunity to complain, available before deprivation, though an actual hearing is delayed until after termination," a pre-deprivation administrative hearing is unnecessary. *McLelland*, 786 F.2d at 1213 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1984)). In conducting this analysis, a court "'must consult the entire panoply of predeprivation and postdeprivation process provided by the state.'" *Tri-County Paving*, 281 F.3d at 436 (quoting *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990))).

With respect to the first argument—Article 936 was passed without due process of law—Defendants assert that the City provided all the process that was due as it complied with the procedures governing the passage of ordinances contained in West Virginia Code § 8-11-4 when the City passed Article 936. *See Aff. of Ben Newhouse*, Doc. 47-5. There is no requirement that personal notice be provided to those individuals who may be affected by the ordinance. *Richardson v. Town of Eastover*, 922 F.2d 1152, 1158 (4th Cir. 1991) ("Fairness (or due process) in legislation is satisfied when legislation is enacted in accordance with the procedures established in the state constitution and statutes for the enactment of legislation."). Further, Plaintiffs do not appear to challenge Defendants' compliance with these notice requirements, and instead limit their procedural due process claim to the lack of a deprivation hearing. *See Pls.' Resp.* 9, 14, Doc. 52. Accordingly, the Court **FINDS** that Defendants provided all the notice and opportunity to be heard required to satisfy Plaintiffs' procedural due process rights in its passage of Article 936.

The Court likewise concludes that Plaintiffs have failed to provide sufficient evidence to support their claim they were not provided a sufficient notice and opportunity to be heard prior to the application of Article 936 to their property. What is most crucial to the Court's analysis is the second *Mathews v. Eldridge* factor—the risk of erroneous deprivation under the current procedures and what value additional procedures would provide. Plaintiffs were first informed that Article 936 applied to their subdivision in October 2005, approximately four months after the ordinance was passed. *2d Am. Compl.* ¶ 13. Within one day of the notice, Plaintiffs met with representatives of the City to discuss the application of Article 936 to Plaintiffs' subdivision. *Id.* ¶ 14. During this meeting, Plaintiffs were provided the opportunity to present their case that as their subdivision had been previously approved, it should grandfather in; Defendants denied Plaintiffs' request. *Id.*

Subsequent to that meeting, Plaintiffs requested and were granted a hearing in front of the Hurricane Sanitary Stormwater Board. Again, Plaintiffs were provided the opportunity to present their case, and, again, Plaintiffs' request was denied. *Id.* ¶¶ 15–16. Following this meeting, Plaintiffs had an administrative hearing in front of the Hurricane Sanitary Stormwater Board, which again concluded that Plaintiffs' subdivision did not grandfather in under Article 936 and Plaintiffs' subdivision, without a stormwater retention pond, was in violation of the new ordinance. *Id.* ¶¶ 16–17. Following this exhaustive and timely review at the City level, Plaintiffs then filed a complaint in the Circuit Court of Putnam County. This case was went up to the West Virginia Supreme Court of Appeals, which definitively concluded that Article 936 did apply to Plaintiffs' subdivision.

The Court is unable to imagine any additional process that Plaintiffs are due. The City met with Plaintiffs multiple times, and Plaintiffs were provided with ample opportunity to present their case at the administrative level and, later, through judicial review. Further, the City's interest in passing Article 936 is significant. As detailed *supra*, the City exercised its police powers to decrease the threat of flooding resulting from increased stormwater flow from impervious surfaces constructed as part of new development and redevelopment projects. Article 936 is directed at protecting the health and welfare of the City. In addition, any additional procedures would burden the City with fiscal and administrative costs that, as detailed above, would provide little additional meaningful review to Plaintiffs. In light of the significant opportunity provided to Plaintiffs to be heard, and the legitimate interest of the City of Hurricane in passing its ordinance, the Court **FINDS** that Plaintiffs were provided with all the process they were due, and therefore **DISMISSES with prejudice** Plaintiffs' Second Prayer for Relief in their Second Amended Complaint.

**C.**     **Plaintiffs Were Not Denied an Exercise of Their First Amendment Rights**

In a First Amendment claim, to ascertain whether an individual's speech in a public forum was unconstitutionally restricted a court must first determine the nature of the forum. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008) (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001)). Here, Plaintiffs were denied the opportunity to place a topic on the agenda of a City Council meeting. Meetings such as this are limited public fora, "which governmental entities may create in a specified location for a limited use." *Id.*; *see also Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004) (finding that "matters presented at a citizen's forum may be limited to issues germane to town government"); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) (citing *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175 (1976); *Hickory Fire Fighters Ass'n, Local 2653 v. City of Hickory*, 656 F.2d 917, 922 (4th Cir. 1981)).

In a limited public forum, the government may limit the type of speech, for example, by "reserving [its forum] for certain groups or for the discussion of certain topics." *Steinburg*, 527 F.3d at 385 (quoting *Good News Club*, 533 U.S. at 106 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995))) (alteration in original). "Plainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business." *City of Madison*, 429 U.S. 167, 176 n.8 (1976). The government may not, however, "discriminate against speech on the basis of viewpoint, and any restriction must be reasonable in light of the purpose served by the forum." *Steinburg*, 527 F.3d at 385 (quotation marks and citations omitted). The Fourth Circuit has accepted three general "contours" of the allowable restrictions of speech in a limited public forum: (1) "Speech at public meetings called by government officials for discussion of matters of public concern is entitled to normal first amendment protections against general

restrictions or *ad hoc* parliamentary rulings by presiding officials"; (2) speech may be limited when government officials "*reasonably* perceive [the speech] to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion . . ."; and (3) while the government may not censor based on the speaker's viewpoint, it may on the basis of the proposed subject matter *per se*. *Id.* at 385–86 (citations omitted).

Here, Plaintiffs were not excluded from the City Council meeting. Rather, Plaintiffs' proposed topic was not allowed on the agenda for the meeting as the topic related directly to the ongoing litigation between the City and Plaintiffs; the City Council believed it inappropriate to discuss the case on public record and without legal counsel present. *See Aff. of Ben Newhouse* ¶ 19, Doc. 47-5. This is clearly an instance where a decision to exclude was made on the basis of Plaintiffs' status as parties to litigation, and not because of Plaintiffs' viewpoint. *See, e.g.*, *Degrassi v. Glendora*, 207 F.3d 636, 646 (9th Cir. 2000) (finding the exclusion of a Council member reasonable because of the potential conflict "between [plaintiff's] role as a Council member and her personal interest [in her right to defense by the Council]"). Plaintiffs spend a significant amount of time in their response detailing how this denial of their First Amendment rights resulted in the placement of liens on their property.[7] However, their ability to discuss this issue with the City was not precluded by the removal of their proposed topic from the City Council agenda. Defendants' reason for excluding Plaintiffs from the City Council meeting agenda was based on their fear of

---

[7] Plaintiffs also appear to invite the Court to decide whether the City complied with the procedures governing the abatement and liens process. As this was not pleaded in the Second Amended Complaint, it is not before the Court. Accordingly, the issue of whether or not the City complied with the procedures for abatement and lien process will not be decided. This likewise applies to the new claims against Ben Newhouse Plaintiffs appear to be asserting in their response; Mr. Newhouse was removed as a defendant from this case pursuant to this Court's Order dated October 25, 2010 (Doc. 20).

improper ex parte communications without counsel present. Accordingly, Plaintiffs' ability to discuss with Defendants was not permanently blocked; they could still have met with Defendants regarding the letters in question with counsel present. *See Pell v. Procunier*, 417 U.S. 815, 824 (1974) (noting that alternative means of communication is a relevant factor in weighing First Amendment rights again government interests). For the foregoing reasons, Plaintiffs' First Amendment claim is **DISMISSED with prejudice**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment the motion is **GRANTED** in part, and the Court **DISMISSES with prejudice** Plaintiffs' constitutional takings claim, procedural due process claim, and First Amendment claim. The motion is **HELD in abeyance** with respect to Plaintiffs' equal protection claim. Plaintiffs are **DIRECTED** to complete a supplemental expert report within **14 days** of the hearing held on **April 18, 2011**. Within **14 days** of the completion of the expert report, Defendants are **DIRECTED** to depose Plaintiffs' expert. Within **7 days** of the deposition, Plaintiffs are **DIRECTED** to submit a supplemental memorandum of law on the equal protection claim. Within **7 days** of the filing of the supplemental briefing, Defendants are **DIRECTED** to submit any reply. In light of the additional briefing on the equal protection claim, the Court **CANCELS** the trial currently scheduled for May 3, 2011. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 19, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE