**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

B.A. MCCLURE and
CHERYL MCCLURE,

Plaintiffs,

v. CIVIL ACTION NO. 3:10-0701

CITY OF HURRICANE,
CITY OF HURRICANE SANITARY
STORMWATER BOARD,
CITY COUNCIL OF THE CITY OF
HURRICANE, CITY OF HURRICANE
PLANNING COMMISSION,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants' Motion for Summary Judgment (ECF 47) and Motion to Strike Plaintiffs' Expert, Steven Newton (ECF 65). This Court has previously addressed Defendants' summary judgment motion, dismissing all of Plaintiffs' claims except their equal protection claim. ECF 58. The Court held the equal protection claim in abeyance pending additional briefing ordered by the Court. *Id.* This briefing has since been completed, and the remaining issues are ripe for adjudication. For the following reasons the motion for summary judgment is **GRANTED**, and the Court **DISMISSES with prejudice** the remaining equal protection claim. The motion to strike is **DENIED**.

**I.**

**BACKGROUND**

This Court recently issued a Memorandum Opinion and Order in this action providing a detailed background to this action, which it will repeat here rather than rewriting anew.

Plaintiffs B.A. McClure and Cheryl McClure originally filed this suit in the Circuit Court of Putnam County, West Virginia, on January 13, 2006. *Compl.*, *Ex. 1 to Notice of Removal*, ECF 1-1. At issue was the application of a newly enacted provision of the Hurricane City Code to the Plaintiffs' ongoing development of a residential subdivision. Article 936 of the City Code governs the requirements and standards for stormwater management. The subsection of particular relevance to this action is § 936.20(a), which provides: "The requirements and standards of this section shall apply to all new developments and redevelopment projects including the disturbance of land activities of any kind, on any lot, tract, parcel or land or any portion thereof." Plaintiffs contested the application of these requirements to the ongoing construction of their previously approved subdivision as Plaintiffs had commenced development of their eighty-one lot residential subdivision in 2000, prior to the enactment of the provision in 2005. *Compl.* ¶ 10; *2d Am. Compl.* ¶ 7, *Ex. 5 to Notice of Removal*, ECF 1-1. Accordingly, Plaintiffs believed their subdivision should "grandfather" as it was not a new development or redevelopment project.

However, on October 4, 2005, Plaintiffs were advised that their development was not in compliance with Article 936. *2d Am. Compl.* ¶ 13. At that time, Plaintiffs had completed the majority of their subdivision, and only thirty lots remained to be developed. The City informed Plaintiffs that if they did not create a stormwater management plan for the remaining section of the subdivision, the City would not issue building permits for the residual lots. *Defs.' Mem. in Support Mot. Summ. J.*, ECF 48, at 2. As Plaintiffs challenged the application of Article 936 to their

subdivision, the parties were at an impasse. No further building permits were issued[1] and, as a result, the continued construction of Plaintiffs' subdivision was delayed. *See, e.g.*, *2d Am. Compl.* ¶¶ 13, 14, 16, 22, 24. Plaintiffs sought declaratory and injunctive relief from the application of Article 936 to the ongoing construction of Plaintiffs' subdivision. *Compl.* at 1–2.

At issue in the original complaint was whether, as the McClure subdivision's development began in 2000, it grandfathered in under § 936.20(a). *Id.* ¶ 31; *2d Am. Compl.* ¶ 17. On July 30, 2009, the Circuit Court ruled that Article 936 did not apply to Plaintiffs' property. *2d Am. Compl.* ¶ 37. The Circuit Court allowed Plaintiffs to file an amended complaint regarding monetary damages, which Plaintiffs filed on July 17, 2009. *Am. Compl.* ¶ 7, *Ex. 3 to Notice of Removal*, ECF 1-1. This was dismissed by the Circuit Court, finding that Defendants were immune under the Governmental Tort Claims and Insurance Reform Act; Plaintiffs were again given leave to file an amended complaint. *Mot. to Dismiss Order*, *Ex. 4 to Notice of Removal*, ECF 1-1. Plaintiffs filed their Second Amended Complaint on January 4, 2010.[2] *2d Am. Compl.* For the first time, Plaintiffs asserted claims under the federal Constitution, on the basis of a 42 U.S.C. § 1983 action. Defendants moved to have this action removed to this Court on April 29, 2010 on the basis of the newly asserted federal claims. *Notice of Removal*, ¶ 6, ECF 1.

In November 2010, the Circuit Court decision finding Article 936 did not apply to Plaintiffs' property was reversed by the West Virginia Supreme Court of Appeals, which held:

---

[1] Apparently a building permit was issued to one contractor in error. Defendants maintain that no further building permits may be issued without a stormwater management plan that complies with Article 936. *Aff. of Ben Newhouse* ¶ 16, ECF 47-5.

[2] Plaintiffs also at that time filed claims against individual defendants; these defendants were dismissed pursuant to this Court's Order of October 25, 2010, for Plaintiffs' failure to properly serve them. *Mem. Op. & Order*, ECF 20.

> The provisions of Hurricane Municipal Ordinance §§ 936.01 to 936.44 (2005) govern all new development and redevelopment projects including the disturbance of land activities of any kind, on any lot, tract, parcel or land or portion thereof and, therefore, the construction of new residential homes in an existing subdivision falls within the purview of the ordinance.

*McClure v. City of Hurricane*, --- S.E.2d ---, 2010 WL 4723615, Syl. Pt. 3 (W. Va. Nov. 22, 2010).[3] As this decision affirmatively answered the question of whether the ordinance in question applies to Plaintiffs' development, it was only the Constitutional claims that were the subject of Defendants' motion for summary judgment. This Court granted Defendants' motion for all claims except Plaintiffs' equal protection claim. ECF 58. Plaintiffs argue Defendants have applied Article 936 to their subdivision in violation of the equal protection clause as the City has treated similarly situated developers differently than Plaintiffs. Plaintiffs have now submitted a supplemental expert report, and both parties have submitted additional briefing on the equal protection claim.

## II.

## LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P*. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence

---

[3] Plaintiffs spend a portion of their response brief criticizing the West Virginia Supreme Court of Appeals decision. In the supplemental briefing, they also emphasize the fact that their subdivision was approved prior to the passage of Article 936. While Plaintiffs do not explicitly request the Court to review the application of Article 936 to their subdivision, the Court notes that it would be precluded from doing so under the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (finding district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.

## DISCUSSION

Pending before the Court are Defendants' motion to strike Plaintiffs' expert, and Defendants' motion for summary judgment regarding the remaining equal protection claim. The Court will review each of these in turn.

### A. Defendants' Motion to Strike

Defendants move to strike Plaintiffs' expert, Steven Newton. Initially, Plaintiffs had disclosed Jimmy Calhoun, the engineer for their subdivision, as their expert witness. Mr. Calhoun has previously been deposed in this action, but had heretofore not filed an expert report. *Pls.' Resp.*, ECF 72, at 2.

Pursuant to this Court's Scheduling Order entered June 22, 2010, Plaintiffs were required to "make the disclosures of information required by *Fed. R. Civ. P.* 26(a)(2)(A) and (B) . . . to all other parties or their counsel no later than November 29, 2010." *Scheduling Order*, ECF 10, ¶ 3. Steven Newton was never submitted as an expert and, further, was not revealed to Defendants until Plaintiffs filed the supplemental expert report, authored by Steven Newton, on May 3, 2011. ECF 63. Accordingly, Defendants argue that Plaintiffs are unable to offer Steven Newton as an expert at this stage as the date for disclosure has long since passed.

However, Mr. Newton's report was submitted in response to a directive issued by this Court during the April 18, 2011 hearing held in this action. At the hearing, and as later memorialized in its Memorandum Opinion and Order, the Court held the equal protection claim in abeyance in order to allow Plaintiffs the opportunity to submit an additional expert report supporting the claim. According to Plaintiffs' response to the motion to strike, when Plaintiffs contacted Mr. Calhoun to draft a supplemental report, he expressed concern that providing a supplemental report could damage his good working relationship with the City of Huntington and its officials. *Pls.' Resp.*, ECF 72, at 2. In the end, Mr. Calhoun refused to draft such a report. *Id.* As a result, Plaintiffs were forced, at the last minute, to obtain an additional expert, Mr. Newton, who Defendants have since deposed.

Plaintiffs assert that Defendants have suffered no substantive prejudice as a result of Mr. Newton's expert report. The Court agrees. First, no prior expert report had been produced in this action. Second, Defendants have had an adequate opportunity to depose Mr. Newton. *See Dep. of S. Newton*, ECF 67-1. Third, the report in question contains no unfair surprises, and, in fact, provides clarity to the previously confusing comparison of the McClure subdivision to other

developments contained in Plaintiffs' summary judgment briefing. Fourth, if the Court were to grant Defendants' motion, Plaintiffs would be placed in a position where they would be unable to support their claim with any expert evidence. This would be an unjust result, and would defeat the purpose of holding the equal protection claim in abeyance. Last, the Court notes that regardless of which expert Plaintiffs used, Defendants would have received a new report and would have sought to depose whomever drafted that report. In fact, the Court provided for a deposition of the expert following the provision of the supplemental report. Accordingly, the Court concludes that Defendants have suffered no prejudice. Allowing Mr. Newton's report permits the Court to reach a decision on Plaintiffs' equal protection claim, fully informed on all issues. Therefore, Defendants' motion to strike is **DENIED**.

**B. <u>Plaintiffs' Equal Protection Claim</u>**

The Equal Protection Clause of the Fourteenth Amendment states "[n]o State shall . . . deny to any person within its jurisdiction the equal protections of the laws." U.S. Const. amend. XIV, § 1. The Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). To succeed on an equal protection claim a plaintiff must demonstrate (1) "that he has been treated differently from others with whom he is similarly situated" and (2) "that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If a plaintiff successfully establishes this, the court must then ascertain "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (citations omitted).

In Plaintiffs' first summary judgment motion, they asserted that three other developments were treated more favorably than their own: the Greenlee Residence, the Ramey Apartments, and

the Raines Estate. However, Plaintiffs' own expert, Mr. Newton, has stated that the Greenlee Residence and the Ramey Apartments are not similarly situated to the McClure subdivision. *Newton Report*, ECF 68-1, at 11. Accordingly, Plaintiffs' equal protection argument rests on the City of Hurricane's differing treatment, if any, of the Raines Estate development. Essentially, Plaintiffs' argument boils down to the following: in order to comply with Article 936, the Raines Estate was merely required to have rain gardens, while the McClure subdivision was subject to the more onerous requirement of retention ponds[4]. Plaintiffs also imply that this may be a result of a personal friendship between individuals involved with development of the Raines Estate and key individuals at the City of Huntington responsible for decisions regarding the application of Article 936. Plaintiffs' supplemental briefing on the equal protection claim focuses on the "allowances" the City of Hurricane made for the Raines Estate. Examples include allowing rain gardens without "perc tests"[5]

[4] Plaintiffs place a significant emphasis on the City's alleged insistence that the McClures had no choice but to install retention ponds. However, this insistence resulted from the McClures' "fail[ure] to provide evidence indicating that a retention pond was not necessary given the drainage calculations submitted by [their] engineer." ECF 68-2, at 37.

[5] These tests analyze the relative permeability of the soil, which is a factor for the effectiveness of rain gardens in absorbing stormwater runoff. As both the Raines Estate and the McClure subdivision are located on relatively impermeable clay soil, Plaintiffs argue that the failure to conduct these test prior to approving the Raines' stormwater management plan is an example of the less stringent requirements applied to the Raines Estate. There is no evidence that these tests were never performed. In fact, the communications between the Raines Estate engineer and the City indicate that various calculations were made and submitted to the City regarding the various different designs the Raines Estate developers proposed in an effort to achieve compliance with Article 936. *See, e.g.*, ECF 59-4, at 4–5 (discussing among other calculations, calculations for rain gardens "to reduce the runoff coefficient for the post development runoff conditions . . . ."). Moreover, this is not a sufficiently material fact for this Court to deny summary judgment.

Plaintiffs are correct that the City of Huntington had different requirements for the Raines Estate in comparison to their own subdivision. However, this does not support Plaintiffs' claim that the City of Huntington violated their right to equal protection of the law. The Court concludes that the differential treatment did not result from a differing application of Article 936 to each development, but rather resulted from the differences in the development plans and accompanying stormwater management plans for the Raines Estate and McClure subdivision. An overview of the documentation outlining the City's interactions with each developer supports this conclusion.

A review of the communications between the City and the McClures show that the McClures made little effort to comply with Article 936. Instead of addressing shortcomings in their stormwater management plan identified by the City's engineers, the McClures focused their efforts on the state court litigation, which was ultimately decided against them. In November 2005, the McClures were informed that their stormwater management plan application was denied as they "failed to provide evidence indicating that a retention pond was not necessary given the drainage calculations by [their engineer]." ECF 68-2, at 37. Further, the information they had initially submitted to the City was "insufficient data for the [Stormwater] Board to fully review the permit and therefore the same had to be denied." *Id.* at 37–38. Rather than submitting this information during the administrative appeal process, the McClures instead opted to reiterate their position that their development should be grandfathered in under Article 936; the appeal was therefore denied. *Id.* at 40–41. The McClures apparently did not submit the full panoply of information required to comply with Article 936 until just before final approval of their stormwater management plan was given in November 2007. *Id.* at 59–73.

The interactions between the City and the McClures also demonstrate the City's openness to working with Plaintiffs. For example, in spite of the litigation by the McClures, the City was willing to allow construction to continue on all lots in the subdivision—except those needed to construct the retention ponds—so long as each lot's development plan demonstrated how the stormwater would drain from the lot to the potential retention pond, if Article 936 were found to apply to the McClure subdivision.[6] ECF 68-2, at 58; ECF 59-3, at 23. Accordingly, Mr. Calhoun, the McClures' engineer, examined the possibility of installing deep rain gardens on each lot. He concluded that their effectiveness would be hindered by the clay soil at the development site, and while they would handle the runoff from development of the individual lots, they would not be sufficient to address runoff from the streets. ECF 68-2, at 59–60. Because the McClure subdivision plan included a large section of paved roads, causing a significant amount of stormwater runoff, no plan would comply with Article 936 if it did not include a retention pond. *Dep. of J. Calhoun*, ECF 47-4, at 4–6. On the basis of these calculations by Mr. Calhoun, in combination with the retention pond (pending resolution of the ongoing litigation), the City, on November 14, 2007, approved the McClures' stormwater management plan. ECF 68-2, at 74; ECF 59-3, at 23. In spite of this approval, the McClures apparently have yet to implement this plan or finalize construction of the subdivision. *Dep. of S. Newton*, ECF 67-1, at Tr. 51–53.

The Raines Estate developers were, like the McClures, initially told that a retention pond was necessary for Article 936 compliance. ECF 59-3, at 3. As with the McClure subdivision, the Raines

---

[6] At this stage, the litigation regarding the grandfathering in of the McClure subdivision was still working through the state court system. In order to protect the City's interest pending resolution of the litigation, the City requested that each lot include a plan for the stormwater runoff in the event they were successful, which they were, and Article 936 did apply to the McClure subdivision.

Estate did not receive approval of its stormwater management plan until more than two years had passed from the date of initial application. ECF 59-3, at 66 (July 8, 2008 approval letter). However, unlike the McClures, the Raines Estate developers prepared and submitted multiple design permutations over a two and a half year period, finally arriving at a combination that addressed the post development stormwater runoff without requiring a retention pond. *See, e.g.*, ECF 59-1, at 26–28 (Mar. 20, 2006 letter from Burgess & Niple outlining areas of noncompliance with Article 936 for the Raines Estate); ECF 59-1, at 29–30 (Aug. 3, 2006,letter from Burgess & Niple outlining areas still not in compliance at the Raines Estate); ECF 59-3, at 7 (Stormwater Board Nov. 13, 2006 Meeting Minutes indicating efforts by Raines Estate to comply with Article 936); ECF 59-4, at 2–8 (Dec. 14, 2006 letter from Raines Estate engineer responding to Burgess & Niple critiques of stormwater management plan); ECF 59-1, at 31–32 (Dec. 22, 2006 letter from Burgess & Niple outlining still outstanding areas of noncompliance); ECF 59-3, at 8 (Stormwater Board Jan. 8, 2007 Meeting Minutes indicating efforts by Raines to comply with Article 936); ECF 59-4, at 12–14 (Jan. 6, 2007 letter from Raines Estate engineer responding to Burgess & Niple critiques); ECF 59-3, at 10 (Stormwater Board Mar. 12, 2007 Meeting Minutes indicating partial approval of Raines Estate stormwater management plan); ECF 59-4, at 16–17 (June 30, 2008 letter from Raines Estate engineer responding to additional critiques and seeking final approval of the stormwater management plan).[7] Prior to final approval, the Raines Estate development was at first only partially approved, pending further efforts by the developers to comply with Article 936. ECF 59-3, at 14,

[7] Plaintiffs' expert report details the extensive efforts the developers of the Raines Estate were required to put forth in order to achieve compliance with Article 936. ECF 68-1, at 7–10; *see also Dep. of S. Newton*, ECF 67-1, Tr. 53:12–17.

15–16. Similar to the McClure subdivision, the Raines Estate developers were also required to submit individualized "rain garden specs" for each building permit requested. ECF 59-3, at 13.

The Raines Estate does, indeed, provide a good comparison of differing results under Article 936 for similarly situated developments. The different outcomes were, however, a result of the different approaches taken by each developer. The Raines Estate developers, from the beginning, worked with the City to develop a stormwater management plan. In contrast, the McClures fought the application of Article 936 to their development. Therefore, in contrast with the Raines Estate, there were no back and forth communications between the McClures' engineer and the City to develop a stormwater management plan more amenable to the McClures' needs. Moreover, the McClures have had an approved stormwater management plan since November 2007. Nonetheless, they have yet to move forward with construction, apparently in an effort to avoid the retention pond requirement. This was their choice. Any economic loss they have suffered is a result of that choice, and they must bear the consequences.

On the basis of the foregoing, the Court concludes that the McClures have not suffered a violation of their right to equal protection of the law. Accordingly, summary judgment is **GRANTED** and Plaintiffs' equal protection claim is **DISMISSED with prejudice**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 14, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE